Jose Gallegos-Espinal. Is the appellant ready to proceed? Yes, your honor. Appellant, are you ready to proceed? Yes, your honor. Appellant, you may proceed. Thank you. May it please the court, Anna Caluri on behalf of the United States. This court should reverse the district court's order suppressing free videos depicting child pornography, which were found on the cell phone belonging to Mr. Gallegos.  His consent to search the iPhone, which the district court determined expressly included the cell right extraction, did not encompass the forensic search conducted a few days later. Gallegos gave general unqualified consent for the agents to perform a, quote, complete search of his iPhone. Unqualified consent to search a phone includes copying data from the phone and subjecting it to a later forensic search. Revocation of consent can sometimes limit the agent's review of the evidence obtained via consent, but Gallegos did not revoke or even limit his consent at any time. The fact that the agents gave the cell phones back to Gallegos is of no import. A reasonable person, having observed the cell right extraction, would understand that the agents retained a copy of that data and could review it at a later time. Accordingly, this court should reverse the district court's order granting in part the motion to suppress evidence. I'd like to touch briefly, before I go into the scope of the consent, I'd like to touch briefly on whether or not the consent was freely and voluntarily given. The district court did find that it was freely and voluntarily given, and that's not an issue before this court. The defendant did not appeal that, and so it is waived, nor did he really argue it in his appellate brief. But even so, it would be an unavailing argument, because the finding in the district court found that that consent was freely and voluntarily given. It doesn't matter, and nobody's raised it. I agree, Your Honor, and that would be my position. But there is some language in the appellate brief, so I wanted to touch on it briefly. I can move on to the scope of the consent, though. Here, Gallegos gave general and qualified consent, which authorized the agents to copy and copy iPhone data, and we know that through a number of different ways. First, there was verbal consent, and the agent confirmed and documented the verbal consent in the consent form. The consent form stated that Mr. Gallegos decided to allow the ICE agents to conduct a, quote, complete search of his phone and car. The agents were authorized to take any letters, papers, materials, or other property which they may desire to examine. While the form originally encompassed only the Samsung phone and the car, it was later altered to include the iPhone, and Mr. Gallegos gave the agents the password to access the iPhone. Then we also know that the circumstances surrounding the consent, Mr. Gallegos knew that they were copying it. It took about an hour for the cellbrite extraction to go through on the Samsung phone, and he was in it. Did anybody ever explain to him what a cellbrite extraction was? No, no one did, but we know that he was in the same room. It was an open floor plan in the house, and we know that he was there as they hooked it up to what they describe as a techie box. They hooked up the phone to it. Anybody explain what the techie box was? No, no one explained exactly what the techie box was, and Mr. Gallegos didn't ask either. He sat there. He watched. He knew that they were doing something to his phone, presumably taking data off of it. But they would save and use and search days later. He knew that, too. Well, I think a reasonable person would know that as well. Anytime an agent sees evidence of any kind, whether it be drugs, ledgers, data from a cell phone, a cell phone itself, a reasonable person would expect that it would be searched later. We take drugs, and we search them later. We analyze them. I think I'm pretty reasonable, and I actually hadn't heard of a cellbrite. I didn't know what a cellbrite was, but Gallegos would have known, should have known what a cellbrite search was. Well, I think in this case, regardless of whether or not he knew the exact term cellbrite, I think a reasonable person would know when you see your cell phone being hooked up by cables to another device that it was going to be searched and data extracted from it, and the district court found that as defendant to know that they were extracting data from it. Where the district court took issue with, though, is that they would retain that data, and they would search it later. And that's actually the issue here on appeal, is whether after they returned the cell phones to defendant, whether the agent could actually look at that data three days later. And I would suggest that, yes, that was a proper way for them to look at it, and it was encompassed in the scope of consent. Courts, this circuit and other circuits have held for many decades that we can photocopy, we can use, we can analyze data later. And here, the data that was extracted from the cell phone was looked at three days later, and that's proper. Ms. Kalluri, is it true that not only did Mr. Gallegos authorize a complete search of the phone, but he also authorized the agents to take any materials which they may desire to examine? Correct. That part of the consent form? Correct. So, it says specifically, the agents are, quote, are authorized by me to take any letters, papers, materials, or other property which they may desire to examine. And so, we believe that that encompasses the data that they took. The consent encompassed the data that they took from the phones. It also then authorizes the review later. Mr. Gallegos, again, gave unqualified general consent for them to search. And that encompasses the search three days later from the evidence that they did obtain. Was that search three days later consistent? So, the data taken from the iPhone was then transferred to another tech who was looking at it. And the three videos were actually found just in the phone. And the agent testified to this as well. Had Mr. Gallegos objected to the use of the cell bright and the extraction, had the officer done a manual search through the iPhone, he would have found this in, presumably, he would have found this in the iPhone roll. So, it wasn't, you know, hidden and whatnot. So, the agent found it. And I suspect you're going to tell me it doesn't matter what the officer said. But the officer said, I'm looking at this phone to see if there's any evidence of child pornography. At least that's what they say they said to him. So, make a determination about whether or not you get custody of yourself. And so, they look at the phone, make a determination about that. Why wouldn't a reasonable person conclude that any search that I had authorized was concluded by the time they looked at the information and then make a determination about custody of himself? Well, they actually didn't do a manual search of the phone. So, what happened is after he gave consent for them to search it, they hooked it up to the cell bright extraction and they started extracting it. They finished the part of the cell bright extraction for the Samsung actually at the house. But at that time, the search of the house was complete. And so, Agent Newman spoke with the defendant and asked him to come back to the phone. Mr. Gallegos agreed. And so, he followed in his car to the HSI. So, he still didn't know yet about whether he'd get custody of the citizen? At that point, no. I don't believe so. After the interview, he left. And I believe at that point he was. But he voluntarily went. He didn't object. He didn't disagree in any way. He went. He was subject to the interview. He waited. They did the searches of both phones. And at the end of that interview, they returned both phones to him. But at the time that the officers obtained his consent, the only purpose that they had indicated to him was the possibility or the search for pornography. Is that correct? Yes, it is. In reality, the officers were concerned that he was actually interested. Would he assume, then, when he gave his consent, that that was the framework of his consent? That it was so lit for pornography and he didn't extend the consent to matters that had not been referenced by the agents or by him? Well, I think a few things. Yes, the agent told him that they wanted to search for child pornography. And indeed, they found child pornography. That was a ruse. I mean, the agents admittedly thought that Mr. Gages was They really didn't find child pornography until long after or until after it had been determined that he was not going to be able to sit with the children. Am I correct? That is true. They did not find the child pornography until three days later. But I think that's just a function of how this happened, because they had Mr. Gages objected to in any way. The purpose they asserted, searching the cell phone, had vanished and no Would that be a fair understanding of what he was saying or what he was consenting to? No, I don't believe so. Yes, the officer said he wanted to search for child pornography. But the consent form is much broader than that. The consent form does not limit the purpose in any way. Doesn't the consent form have to be considered in the context of the surrounding circumstances of what he understood? And particularly in light that the officers were being deceptive at the outset, which they acknowledged they were. They acknowledged they had no interest in pornography, that they're really searching for his involvement in the drug trafficking. Yes, I agree that the consent form and the verbal consent and all of the circumstances surrounding the consent needs to be taken into consideration when you're talking about the scope of consent. But what we have here is even though they said their stated purpose was to look for child pornography. So you're saying it does matter in our determination that there was deception on the part of the officers and that the basis that they gave to him for the search had dissipated when they made the search? No, I don't believe that the No, I don't believe that that is accurate. Yes, I believe that we need to take into consideration what they told him. But I also think that we need to take into consideration the consent form and the fact that it is very broad and allows them a full and complete search of the phone for whatever they may find. I think that the consent form is to what a reasonable person would have understood he was consenting to under the factual circumstances that existed at the time that he gave the consent. Absolutely. And the consent form says a complete search and he sat there for an hour and watched them hook it up to a cell bright machine, which extracted all of the data on it. And so I believe that that is part of the consent. He never limited the consent. He never revoked the consent. I don't think there's any acknowledgement on his part that he knew what they were doing when they attached the celibate extractor to his machine or watched it. Did he ever did he acknowledge that he understood that they were searching his entire cell phone for any kind of evidence or criminality that may have existed at any time in the life of a cell phone? No, I don't believe we have any acknowledgement from the defendant on that. But as the district court found a reasonable person in that situation watching his phone being hooked up to a machine would understand that the data is being extracted from it. I think we have to be convicted. Would you say that if it resulted in evidence that he had engaged in a bank robbery that the search would be valid as to and prosecutable on the basis of the search for bank robbery that may have been found on the iPhone consistent with the consent that he gave? Absolutely. Anything that we found on the iPhone. Anything you've ever done, I give you consent to search my phone for anything I've ever done in my private or public life on any basis and you can use it any way you want to. Criminal prosecute me, embarrass me or otherwise. So what is the consent? Was that valid? Yes, it was. The consent form that he signed. That's what a reasonable person would have understood? Yes. When you are faced with a consent form that authorizes a complete search of your iPhone, of your phone and your car. The return of your life. Okay, go ahead. Suppose it wasn't a phone. Suppose it was a box of papers and the cop said, we want to search the box of papers for child pornography. He says yes. They open up the box and they find a bloody knife. I assume you would agree that they could use the bloody knife to prosecute the murder, right? Absolutely. And that's what's similar to this case, this court case in Mendoza-Gonzalez. And there was a sense you can search the back of a trailer and then it was a taped box and inside the box was marijuana. When they hooked the phone up to the machine, did they tell him why they were doing it? No, but it was part of this. I mean, they told him they were searching it and it was part of the search. I mean, they didn't say we want to charge it, right? They said we want to search it. No, it was all within the context of the search of the phones that he authorized. It was after he had signed the consent form. I see my time is up. Unless there are any questions, I'll be back for rebuttal. I actually have a few. Yes, Your Honor. One is, we're talking about, you mentioned an iPhone, but unless I misunderstand, the fact is there were two phones. Is that right? Correct. All right. And so they got consent from him initially to search his Samsung phone. Correct. Which is the phone that was on his person. Correct. All right. And then when they searched the car is when they discovered an iPhone. Correct. And then they go back. And so that original consent was a consent just to search the Samsung phone. Isn't that correct? Initially, yes. All right. So, and then they go back and all this talk about him seeing his device connected to his phone. That was the Samsung phone to which he originally consented to be searched. Isn't that correct? Yes, Your Honor. And the search of the iPhone, he didn't see that search taking place with the connected to his device and all that, did he? So, no, he didn't. But what happened is that- Where the child pornography was found. Isn't that correct? Yes, Your Honor. All right. So, after they found the iPhone in the car, the defendant consented to the search of the iPhone. They wrote down the iPhone on the consent form. And the defendant provided the password to the iPhone. And that's how they were able to access it. They sat down and they put the at the kitchen table in full view of the defendant. And they started searching the Samsung. After the search of the house was complete and they were ready to leave the premises, Agent Newman spoke with the defendant and asked him to come down to the HSI headquarters so they could continue the interview of him, but also continue the search of the phone. So, he was informed that they would do the same thing to the iPhone. Indeed, the district court specifically held that a reasonable person would understand that the same search that they did to the Samsung would be completed on the iPhone as well. And again, at no time did the defendant revoke or limit his consent in any way, shape, or form. Thank you, counsel. Thank you. Mr. Kuniansky, did I pronounce that correctly? Yes, your honor. Thank you. I'm Richard Kuniansky and I represent the appellee, Mr. Galagos Espinal. This case presents an important issue regarding the scope of consent of cell phones. And both parties are in agreement as to what the standard is. What would an objective, typical person believe was the scope that was given? And I think it's important to look at the surrounding circumstances. And Judge Grace, I will point out some of the things that you did. When we started out, what was asked for is, I want to look through your Samsung phone for evidence of child pornography so that you will be able to take your three-year-old son with you. And it was a double ruse. And part of it was a lie that goes right to the scope of the consent given. And the agent was very candid and I commend him for that. But what he testified to is, I'm not going to tell somebody that we're going to hook it up to a Cellbrite machine because they may not give me consent to do that. So I'm going, he didn't use the word lie. I'm going to use the word lie. So I'm going to lie to them about the scope of the consent. And I'm going to tell them that I'm just going to, quote, look through the phone. So right in the beginning, we have egregious deception on the part of the government agent dealing with the scope of consent. Did he not then sign a form? Yes. And I'm glad your Honor asked that because I'm going to get to that next. He signed a very antiquated form that doesn't have anything to do with electronic media and talks about searching papers. So I think you've got to take the form in the context of all the underlying facts. When you're told I'm going to, quote, look through your phone and then a form is put in front of you to sign and it talks about search of papers, does that somehow extend that look through the phone to connecting it up to a Cellbrite machine and uncovering a total history of your life? Cell phones are different than boxes of material. The U.S. Supreme Court has recognized that. How are they different from a box of material? It contains, well, U.S. Supreme Court and Riley talked about that extensively. Cotterman talked about that, the Ninth Circuit en banc. It basically is somebody's entire life. It can take up really big boxes of material. Five stories of a library is what they say. So if I sign a form and tell you to do a complete search of this very large box of material? Well, I think cell phones are completely different, and that's what the U.S. Supreme Court said in Riley. That's what the en banc Ninth Circuit Court of Appeals said in Cotterman. Does Riley have to do with the scope of a consent to search a cell phone? No, but I think it leads guidance on how we look at the issue of cell phones and whether they're different than boxes. Cotterman, for example, was a border search. It's very well established that agents can search at the border. They don't need reasonable suspicion. They don't need anything. Yet the Ninth Circuit sitting en banc carved out an exception requiring reasonable suspicion when you're talking about the contents of a laptop computer. And they go into how it can contain somebody's entire life and that we're therefore going to require reasonable suspicion. Riley, another well-rooted exception to the search warrant requirement was a search incident to arrest. I guess the Supreme Court could have just said, hey, you can search that telephone. It's a search incident to arrest. But no, they realized that something that contains somebody's entire life is to be considered different than a box. What's your best case that we should interpret the scope of a consent to search a cell phone narrower than any other particular item? Well, I think Riley is the best case. Cotterman is the second best case. Do either of those cases have to do with the scope of a consent to search? No, Your Honor. But I think they definitely bear guidance that cell phones are treated differently. To give an example, there's a whole body of law dealing with automobile searches. They're treated different than stagecoaches. Technology matters. Supreme Court has said that. Yes. Really well in technology. Excuse me, Your Honor. You can hide incriminating evidence really, really well on a cell phone. Well, that may be true. But I don't think that changes the scope of consent and the constitutional law regarding cell phones any more than the common ways. Aren't we getting away a little bit from the district court's finding? They found that there was probable cause for search and upheld the search in all respects, except for the retention of the material for an extended period of time. And so how do you handle the fact that the district court does not really agree with the arguments that you're making now? Two things. I think, number one, we prevailed on the motion to suppress. If this court finds any basis to support that, then it can affirm the ruling. I don't agree with that portion of Judge Miller's opinion that a forensic search was OK because he saw it hooked up to the Celebrite machine. And what you got to realize is what he saw hooked up to the Celebrite machine was a Samsung phone. So now we got to assume that based on that, he's going to assume that the other phone would also be hooked up to that. He understands what it is. Why wouldn't that be a perfectly reasonable assumption? A reasonable person, the cops say, I want to search a phone that's hooked up to a machine and find another phone. Why wouldn't a reasonable person think, well, they're going to hook it up to the machine? Maybe we can speculate that. I don't know that a typical reasonable person would believe we're also going to hook up the other machine or the other phone to the machine. And I don't think that a typical reasonable person has any clue what this machine is and what it does and that it takes deleted files, all the information. As a criminal defense attorney, I was pretty shocked the first time I got discovery from Celebrite machine. It's volumes involved, binders and binders and binders of material that takes weeks to go through. Do I understand from your argument that you are not defending the district court's ruling in this case or the reasoning of the district court's ruling in this case of suppression? I'm defending most of it, not all of it. I have no problem. As I understood, his basic reason was that they retained the information for an extended period of time. And that alone is what rendered the search unreasonable. That was what Judge Miller said. And I think for sure that did render it unreasonable. The question is, can they retain data indefinitely? At the point in time, how long did they retain it? How long did it take to find it? I think in this case it was a few days. Okay. So he agreed that they could take materials and examine them. Why is it unreasonable to wait three days to examine material? After all, it's a box with your whole life in it. Sometimes it takes... I think if you want to compare it to the search of a house, you can't decide you're going to go back into that house on another occasion. I don't think it's reasonable to assume that when they give you your phones back and the reason for the consent is dissipated, that is he's not being given custody of his three-year-old brother, the whole basis of it is dissipated. A reasonable person wouldn't believe the government is going to retain that indefinitely and search it at their leisure. The consent eschemia, I contend, is very close on point. A Fifth Circuit case in which the search was reasonable, but the seizure was unreasonable in the extent to the point that it extended the time beyond a reasonable basis. Well, I'm saying two things. I'm going beyond Judge Miller on the first part, that I don't believe the consent gave a consent to do a forensic search of his cell phone under the circumstances of this case. But step two, I definitely agree with Judge Miller's reasoning that the reason had dissipated for the consent. He wasn't getting custody of his three-year-old boy. The phones were given back. A typical reasonable person would believe under those circumstances that the government wouldn't be retaining their data indefinitely, and I don't believe signing of an antiquated consent form dealing with the search and seizure of papers changes anything. Wouldn't a fair reading of our holding and eschemia indicate that the return of the cell phone was an indication that that exchange with law enforcement was concluded? Correct. And here, I think a typical reasonable person could believe that when I gave them consent to search my phone to look for child pornography so they can understand I could safely get custody of my three-year-old brother, and then they returned the cell phones to me, that that ended the exchange. I mean, it did not end the exchange in the sense that they had authorized the search. They had the evidence, and they retained what they seized in the course of an authorized search. Why isn't the seizure of the evidence judged by the search itself as to whether if the search was reasonable, then the seizure was reasonable? I'm not sure I understand the question, but I don't believe that... I'm considering the retention of the evidence as a seizure. They seized that evidence as pursuant to a reasonable search. Well, I don't think that maintaining somebody's life history indefinitely is reasonable, particularly in light of the consent that was given in this case and the reasons for that consent. I also think that the court needs to take into account the deception that was used regarding the scope of consent that Judge Miller merely found as troubling that I would contend is a lot more than troubling. I've cited some cases in my brief, including the SEC case, dealing with the fact the government should be held to a higher standard. They shouldn't be able to lie to somebody about being able to go into their premises or being able to get consent to do a search, and people should be able to trust the government's representations to them. Unless the court has any other questions, I believe that concludes the points that I wanted to make. Thank you, counsel. Rebuttal. You're muted. You're muted. We can't hear you, Ms. Bloor. She can't hear you. No, I can hear you now. Am I back? You're back. Okay. All right. Just a few points. I think no one here is disagreeing that cell phones and electronic devices implicate significant privacy or interest. We know that from Rylan. We know that from other subsequent cases. But the point here is that when you give unqualified general consent, it allows you to go in and search, and I think that's what we have here. Ms. Bloor, here's my problem. When I have an officer who says that I'm deliberately vague and ambiguous about the scope of the search, because I don't want to unnerve the person I'm getting the consent from. By unnerving me, I don't want to tell them everything I might be looking at, because then they might not agree to let me look at it. So what he says is, I just want to look through the phone. If you said to me, I want to look through your phone, I'd assume you were going to take it and open it up and flip through and see what you can see, and then it's done. But my question is, and there are cases where the government has done this and the consent was found to be valid, couldn't you have a form that was updated enough that you didn't refer to papers? So if you're referring to phones or computers, there are searches of computers where the consent says, we're going to search your computer, we're going to look at files, we're going to and verbally you say, I want to look through your phone. Wouldn't it be prudent to have a form that actually said what you were getting consent to do? So there's a lot in that question. Yes, I agree that you can have a more detailed consent form, but HSI uses this form, and that's what we have here. And you all are not going to change it. That's what you tell. You're going to keep getting people to sign something saying, I want consent to search your papers, and then you're going to take it and look through the phone. Well, respectfully, you don't need to do that. Well, as the defendant has pointed out in his brief, there is some guidance about having a more detailed form. Having said that, it is not up to me whether or not to change that consent form. And so what we have to do is look at the facts of this case. And I agree that it says letters, papers, materials, and other properties. By the way, do you know? It's a general Homeland Security form that they use. It's the standard one that they use for all cases. And so that's what it is at this point. But I think you have to take it in context here, right? So you have the general consent. You have the phone. You knew it was the phones that were going to be searched. We all know that there is a tremendous amount of data on phones. The idea that you're going to search the phone means you're going to search the data. Then you do have a general consent form, which is very broad and allows a complete search. And it allows for the retention and the further review of that search. We also have a defendant who is admittedly a bit technology savvy because he's got two phones and he's storing child pornography on it. And he sees it hooked up to another device that is going to be searching. While it's true that the agent did not discuss specifically what that device was going to do, it's apparent from the conversations and what was going on. In full view of the defendant, that they were conducting a search of the phone. Any reasonable person seeing a phone or a computer for that matter, hooked up to a device, would understand that they are extracting data from it. And I think that this is different than what happened in Escamilla. In Escamilla, it was a roadside stop. It was a manual search. The officer said, I'd like to look through it. He handed it, the defendant handed over the phone. He manually scrolled through it and then he handed it back. There was no- He did what he had consent to do. Exactly. But in that case too, there was no consent form which authorized a complete search. The defendant did not witness him hook it up to a cell right machine where the data was extracted. So I think factually, it's also very distinct from Escamilla. The other thing, two other quick points. Going into the cases of the SEC and Parson, the defendant cites two. In those cases, the agent did not inform the defendant that he was actually the subject of an investigation. Here, the agent flat out told him, we're looking for child pornography. Possession of child pornography is a crime. So, and this is also in the context of his mother being arrested. So here, we have a defendant who well knows that the agents are investigating a crime and they flat out tell him that they're going to be investigating child pornography. So while they weren't necessarily looking for child pornography, they did inform him that they were looking for evidence of a crime. And the defendant obviously knows what's on his phone. And he consented anyway to the search of his phone. Unless there are any other questions. All right. Thank you, counsel. Thank you. Thank you. This concludes our formal argument for the day. We'll take this matter under advisement and we stand adjourned.